# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### JANUARY SESSION, 1997

FILED

May 15, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE**, | ) | No. 02C01-9602-CR-00061 |
| Appellee | ) | |
| | ) | SHELBY COUNTY |
| vs. | ) | |
| | ) | Hon. **JAMES C. BEASLEY, SR.**, Judge |
| **JOHNNY L. SMITH**, | ) | |
| | ) | (Two Counts Especially Aggravated |
| Appellant | ) | Kidnapping; Two Counts Aggravated Robbery; One Count Aggravated Burglary; One Count Aggravated Sexual Battery) |

For the Appellant:

**WALKER GWINN**
Assistant Public Defender
201 Poplar, Suite 2-01
Memphis, TN  38103


**A.C. WHARTON**
District Public Defender

For the Appellee:

**CHARLES W. BURSON**
Attorney General and Reporter

**DEBORAH A. TULLIS**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493


**WILLIAM GIBBONS**
District Attorney General

**AMY WEIRICH**
Asst. District Attorney General
Third Floor
Criminal Justice Complex

OPINION FILED: _____

**AFFIRMED**


**David G. Hayes**
Judge

**OPINION**

The appellant, Johnny L. Smith, was convicted by a Shelby County jury of two counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, and one count of aggravated sexual battery. At the sentencing hearing, the trial court imposed an effective sentence of thirty-eight years in the Department of Correction.[1] In this appeal as of right, the appellant contends that the evidence is insufficient to support his convictions and that his convictions for especially aggravated kidnapping violate the holding of our supreme court in State v. Anthony, 817 S.W.2d 299 (Tenn. 1991).

After review, the judgment of the trial court is affirmed.

**I. Background**

The victims, Gregory Stone and Kisha Reed, along with their two small children, shared an apartment in Memphis. On the date of October 12, 1994, Mr. Stone and Ms. Reed were asleep in their upstairs bedroom, while the two children, ages two and one, were asleep in the downstairs living area. During the early morning hours, the front door of their apartment was kicked open, awakening the sleeping family. Four to five men, brandishing a variety of weapons, entered the home.

In the master bedroom, the men forced Stone onto the floor and covered

---

[1]The dual convictions stem from the fact that the offense involved two victims. Specifically, the trial court imposed the following sentences: especially aggravated robbery, 30 years each count; aggravated robbery, 16 years each count; aggravated burglary, 8 years; and aggravated sexual battery, 16 years. The court ordered that all of the sentences run concurrently, with the exception of the 8 year sentence for aggravated burglary, which was to run consecutively.

his head with a blanket and a pillow, while Ms. Reed was forced to lay on the floor. One man, the apparent leader, demanded "money and guns." The "leader" then began to hit Stone upon his head with a weapon, as he continued his demand for money. Stone informed the leader that he had no money, but he did have a gold and diamond Cadillac pendant, worth $10,000. Stone was restrained with a telephone cord, and the "leader" instructed the other men to look for valuables.

Ms. Reed remained on the floor as ordered, while the "leader" insisted that she too reveal monies or valuables. Reed informed him that she only had her "bill money." With a gun aimed at her head, Reed was forced downstairs to the location where she kept this money. Once the money was retrieved, Reed was returned upstairs.

Upstairs, Ms. Reed sat on her bed with her two children as the intruders continued to ransack her home, looking for valuables. When the "leader" noticed her watching them, he ordered her upon her stomach whereupon she was physically restrained with a telephone cord. While Ms. Reed was bound and on the floor, the leader told her that he was going to have sex with her. However, after making brief sexual contact with the victim, he returned to the planned robbery. No penetration was attempted.

Stone was then placed in the closet in the children's room, while Ms. Reed and her two children were placed in her bedroom closet. The intruders then left in Stone's 1983 Nissan 300SX. After their departure, Stone was able to free himself and the others. The family then called the police from a neighbor's residence.

3

At trial, the appellant presented an alibi defense. The appellant's girlfriend testified that, at the time of the robberies, she and the appellant were in bed. Ms. Reed testified that, immediately following the offense, she recognized the "leader" as the man to whom Stone had provided transportation approximately two months previously. At the police station, she identified the appellant from a photographic lineup. At trial, Ms. Reed again identified the appellant as the perpetrator of the offense in this case.

## II. Sufficiency of the Evidence

In his first issue, the appellant challenges the sufficiency of the convicting evidence. Specifically, he contends that, because the only proof offered linking him to the charged offenses is the uncorroborated testimony of Ms. Reed, the proof is insufficient to establish his identity as the perpetrator of these offenses. We disagree.

An accused challenging the sufficiency of evidence on appeal has the burden of proving that the evidence is insufficient. Id. In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Moreover, the State is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). It is the appellate court's duty to affirm the conviction if the evidence viewed under these standards was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); Tenn. R. App. P. 13 (e).

4

Again, the only challenge raised as to the sufficiency of the convicting evidence relates to Ms. Reed's identification of the appellant as the perpetrator of the offenses. Immediately after the incident, Ms. Reed stated to Mr. Stone that she recognized the perpetrator as being "that dude you gave a ride to that day." From this identification, Stone was able to name the perpetrator as the appellant. Later that morning, Reed positively identified the appellant from a photographic line-up at the police station.

In State v. Strickland, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993), this court held that the testimony of a victim identifying the perpetrator is sufficient in and of itself to support a conviction. See also State v. Shelton, No. 01C01-9505-CC-00144 (Tenn. Crim. App. at Nashville, Mar. 22, 1996), perm. to appeal denied, concurring in results only, (Tenn. Nov. 12, 1996). Moreover, the credibility of eyewitness testimony identifying the accused as the perpetrator of the criminal offense for which he stands trial is a question of fact for the determination of the jury upon consideration of all competent proof. Strickland, 885 S.W.2d at 87 (citing State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982)); see also State v. Williams, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981). Although the appellant presented an alibi defense, i.e., the testimony of his girlfriend, the jury, by returning a guilty verdict, accredited the testimony of Ms. Reed. Accordingly, we conclude that the evidence is sufficient for a rational trier of fact to find the appellant guilty beyond a reasonable doubt. This issue is without merit.

### III. Anthony Issue

The appellant, in his next issue, contends that his convictions for especially aggravated kidnapping are improper, because the kidnappings were merely incidental to his primary purpose of armed robbery and, thus, cannot withstand scrutiny under the rule announced in Anthony, 817 S.W.2d at 299.[2] Anthony was our supreme court's first decision specifically addressing the issue of whether movement incidental to an underlying crime such as robbery would be sufficient to sustain a separate kidnapping conviction. Expressing a concern for the constitutional guaranty of due process, the court announced that the test of whether the kidnapping should be sustained was "whether the confinement, movement, or detention is essentially incidental to the accompanying felony . . . or whether it is significant enough, in and of itself, to warrant independent prosecution . . . ." Anthony, 817 S.W.2d at 306. Again, in State v. Coleman, 865 S.W.2d 455 (Tenn. 1993), our supreme court held that the offense of aggravated kidnapping could not stand in view of convictions returned for aggravated robbery and aggravated rape, based upon the due process principles announced in Anthony.

At this juncture, it is important to note that the decisions in Anthony and its companion cases, State v. Martin, 817 S.W.2d at 299, and Coleman, involved statutory offenses under the pre-1989 Criminal Code.[3] The court's focus in these cases was "whether the confinement, movement or detention is essentially incidental to the accompanying felony." In 1989, Tennessee enacted a new criminal code, adopted, in large part, from the MODEL PENAL CODE, which included the graded offenses of false imprisonment, kidnapping, aggravated kidnapping

---

[2]The appellant raises no Anthony issue with respect to his conviction for aggravated sexual battery.

[3]The offenses of aggravated kidnapping in the consolidated cases of Anthony and Martin were committed in 1986 and 1988. The offense in Coleman was committed in 1988. At the time these offenses were committed, the core element of the offense of aggravated kidnapping proscribed the conduct of one who unlawfully "seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away another. . . ." Tenn. Code Ann. § 39-2-301 (1985 Supp.).

and especially aggravated kidnapping.[4]

The drafters of the MODEL CODE recognized that a broadly-drawn kidnapping statute could potentially sweep within its scope conduct that is unlawful, but which should be punished as some other crime.[5] MODEL PENAL CODE §212.1. The Code's approach to this concern was to define the crime in terms that identify a distinct kind of wrongful act or harm. The statutory language of our kidnapping statute adopts this rational. Thus, the focus of our kidnapping offenses is upon the specific harm threatened as opposed to movement, confinement or detention. Under our current criminal code, before a conviction can occur for any of the enumerated kidnapping offenses, there must be proof of an unlawful removal or confinement of another so as to "interfere substantially" with the other's liberty, coupled with specific conduct that causes or threatens a specific harm. Tenn. Code Ann. § 39-13-302 (1989). In the case before us, the specific harm targeted was "accomplished with a deadly weapon." Tenn. Code Ann. § 39-13-305(1).

---

[4]Tenn. Code Ann. § 39-13-305 defines especially aggravated kidnapping as false imprisonment . . . :
>    (1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon;
>    (2) Where the victim was under the age of thirteen at the time of the removal or confinement;
>    (3) Committed to hold the victim for ransom or regard, or as a shield or hostage; or
>    (4) Where the victim suffers serious bodily injury.

[5]The Code comments provide the following illustrations:

> Thus, for example, the robber who forces his victim to move from one room to another in order to find a cashbox or open a safe technically may commit kidnapping as well as robbery. This reasoning raises the possibility of cumulative penalties or of higher sanctions for kidnapping, even though the "removal" of the victim to another place was part and parcel of the robbery and not an independent wrong. Similarly, many instances of forcible rape involve some coerced movement of the victim or unlawful restraint for enough time to complete the sex act. Again, the actor may be liable for both kidnapping and rape, even though such asportation or detention of the victim is a criminologically insignificant circumstance in a course of conduct constituting rape. Definition of kidnapping to exclude such cases is a task of special subtlety for, unless particular care is taken, trivial aspects of robbery, rape, or some other crime will end up classified as the most serious version of kidnapping. . . . The MODEL PENAL CODE'S response to these concerns is to retain kidnapping as an aggravated felony but to restrict its scope to cases of substantial removal or confinement for certain specified purposes. MODEL PENAL CODE 212.1(2)(3).

The enactment of new statutory offenses of kidnapping have not, however, obviated the guarantees of due process and fundamental fairness addressed in Anthony. Reiterating this principle, we hold that the analysis employed in determining the propriety of a kidnapping conviction committed in the course of another felony should focus on the specific harm of the "kidnapping" sought to be prevented in conjunction with the specific facts of each individual case, rather than considering the general elements of "false imprisonment," which are present in any grade of the offense.

Accordingly, based upon the due process concerns announced in Anthony, and the legislative focus of our current kidnapping statutes, we adopt the three part test utilized by other jurisdictions with similar statutory language.[6] Moreover, we note that this test was cited to, with approval, in Anthony, 817 S.W.2d at 306. See also State v. Robinson, No. 01C01-9207-CR-00234 (Tenn. Crim. App. at Nashville, July 22, 1993). Under this test:

> [I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
>
> 1. Must not be slight, inconsequential and merely incidental to the other crime;

Buggs, 547 P.2d at 731. The question should not focus upon incidental movement from point A to point B, but, rather, upon whether the confinement or removal "interfere[d] substantially" with the other's liberty. Tenn. Code Ann. § 39-13-302(a). In other words, there can be no kidnapping where the only confinement involved is the sort that, although not necessary to the underlying felony, is likely to naturally accompany it. Berry v. State, 668 So.2d 967, 969 (Fla. 1966).

> 2. Must not be of the kind inherent in the nature of the other crime;

Buggs, 547 P.2d at 731. To satisfy this prong the confinement must not be the

---

[6]This test was first promulgated by the Kansas Supreme Court in State v. Buggs, 547 P.2d 720, 731 (Kan. 1976). See also Faison v. State, 426 So.2d 963 (Fla. 1983).

sort inherent in the underlying offense. For example, it is not necessary to tie up the victim in order to commit a robbery. Berry, 668 So. 2d at 969. And,

> 3. Must have significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

Buggs, 547 P.2d at 731. "[T]he determination of whether the confinement makes the other crime substantially easier of commission or substantially lessens the risk of detection does not depend upon the accomplishment of its purpose. The question is whether the initial confinement was intended to further either of these objectives." Berry, 668 So. 2d at 970 (quoting Ferguson v. State, 533 So.2d 763, 764 (Fla. 1988)). There can be no bright-line rule for determining whether the "removal" or "confinement" of a victim to another place is part and parcel of the accompanying felony, or whether it will support an independent criminal offense. The test remains a subjective one, based upon the facts of each case.[7]

Again, in the case before us, the appellant was charged with especially aggravated kidnapping by use of a deadly weapon, Tenn. Code Ann. § 39-13-305(a)(1). Applying the above stated principles to the present case, we hold that the conduct of the appellant constituted especially aggravated kidnapping as contemplated by our legislature.[8] The appellant, armed and accompanied by four others, entered the bedroom of the sleeping victims, threatened them with a weapon, beat the husband upon his head with the weapon, and tied them up with telephone cord, while the others ransacked the premises for valuables. Before leaving the home, the appellant ordered that the victims be placed in separate closets, barricaded with furniture. First, this confinement was not slight,

---

[7]The supreme court, in Anthony, suggested that "one method" of resolving the question of "whether the confinement is necessarily incidental to the accompanying felony," is to ask "whether the defendant's conduct substantially increased the risk of harm over and above that necessarily present in the crime of robbery itself." Id. at 306. We conclude that this inquiry is necessarily inherent within each prong of the test set forth above.

[8]It is the legislature's role "to proscribe and prevent conduct that unjustifiably and inexcusably causes or threatens harm to individual, property or public interest for which protection through the criminal law is appropriate." Tenn. Code Ann. § 39-11-101(1) (1989).

9

inconsequential, or merely incidental to the crime of robbery. The act of tying both victims with cord and placing them in separate closets "interfere[d] substantially" with their liberty. Second, it was not necessary to tie the victims in order to commit the robberies. Third, the binding of the victims had independent significance because it made the robberies easier to commit and substantially lessened the risk of detection. This issue is, therefore, without merit.

For the foregoing reasons, the judgments of conviction are affirmed.

_____
DAVID G. HAYES, Judge


CONCUR:


_____
JOE B. JONES, Presiding Judge


_____
JOE G. RILEY, Judge